UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Cause No. 2:14-cr-93 |
| ) | |
| JACK WEICHMAN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Jack Weichman, former owner of an accounting firm bearing his name, has been charged in a 36-count indictment with bank fraud, concealment of assets related to his bankruptcy, conspiracy to conceal assets, money laundering, wire fraud, and filing false tax returns. (DE 48.) Among other crimes, the indictment alleges that Weichman devised a scheme to withdraw and borrow millions from Centier Bank in the names of two clients of his accounting firm (designated "Dr. A" and "Dr. B") without their knowledge or authorization. He moves to dismiss Counts 1–8, 10(a), and 27 for bank fraud, concealment of assets, and money laundering under Federal Rule of Criminal Procedure 12(b)(3)(B), on grounds that they are insufficiently alleged. The motion has been set for oral argument with respect to Counts 10(a) and 27, and this opinion sets out the reasons Weichman's motion is denied with respect to Counts 1–8.

**DISCUSSION**

Under Rule 7(c)(1), "an indictment need not say much to be deemed sufficient— it must: (1) state all the elements of the crime charged; (2) adequately apprise the

defendants of the nature of the charges so that they may prepare a defense; and (3) allow the defendant to plead the judgment as a bar to any future prosecutions." *United States v. Moore,* 563 F.3d 583, 585 (7th Cir. 2009) (internal quotation marks and citation omitted). Weichman does not allege that the indictment fails to apprise him of the nature of the charges against him or that he would not be able to plead the judgment as a bar against future prosecution, so the only question is whether the indictment sufficiently sets out the elements of the crimes charged. To make this determination, I must review the indictment "as a whole" and give it a "practical, rather than a hypertechnical, reading[.]" *Id.* In doing so the allegations in the indictment are taken as true. *Id.* at 586.

There are two ways to commit the crime of federal bank fraud, one under 18 U.S.C. § 1344(1) and another under 18 U.S.C. § 1344(2). Weichman is charged with violating both provisions, and he challenges the sufficiency of the indictment with respect to both subsections. I'll start with his challenge to subsection 1344(2) before moving to his challenge to subsection 1344(1).

### *Bank Fraud Under 18 U.SC. § 1344(2)*

Bank fraud under section 1344(2) has two elements: (1) that the defendant knowingly executed a scheme "to obtain any of the moneys . . . owned by, or under the custody or control of, a financial institution" and (2) that he did so "by means" of a materially false or fraudulent pretense, representation, or promises. *See Loughrin v. United States*, 134 S. Ct. 2384, 2389 (2014). Weichman argues that Counts 1–8 do not

allege that he used a false or fraudulent pretense, statement, or promise because he was authorized to access his clients' accounts and lines of credit and did not forge or alter any document to obtain money from the bank. (DE 124 at 3–5.)

I disagree. Counts 1–4 and 8 allege that Weichman "without Dr. A's knowledge or consent, used a stamp that bore Dr. A's signature to complete [] checks written to Dr. B" and that he "caused employees . . . to call in transfers of tens of thousands of dollars from Dr. A's account[.]" (DE 48 at 6.) It's clear from the indictment that each of these transactions relied on an implicit misrepresentation that Weichman was authorized to make *that* transaction. *See United States v. Falcone*, 934 F.2d 1528, 1542 (11th Cir. 1991) ("[U]nauthorized uses of the signature stamp were false representations, akin to forgeries.") (internal quotation marks and citation omitted), *vacated*, 939 F.2d 1455 (11th Cir. 1991), *reinstated on reh'g,* 960 F.2d 988 (11th Cir. 1992)*; United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991) ("By mixing negotiation of legitimate checks with unauthorized deposits of fraudulently procured checks, Morgenstern sought to convey the misleading impression that he was acting within the scope of his legitimate authority[.]"); *United States v. Briggs*, 965 F.2d 10, 12 (5th Cir. 1992) ("Briggs falsely held herself out to have authority, which she in fact did not have. This conduct constitutes a false pretense within the meaning of the statute.").

Nor has Weichman identified any real support for his claim that a false statement under subsection 1344(2) requires the forgery or alteration of a document. His motion cites four cases in which a bank fraud conviction was overturned, at least in part,

3

because there was no forgery or alteration of the check. (*See* DE 124 at 5 (citing *United States v. Davis*, 989 F.2d 244 (7th Cir. 1993); *United States v. Rodriguez*, 140 F.3d 163 (2d Cir. 1998); *United States v. Laljie*, 184 F.3d 180 (2d Cir. 1999); *United States v. Thomas*, 315 F.3d 190 (3d Cir. 2002)).) But those cases looked at whether the *evidence* was sufficient to sustain a conviction, not whether the *indictment* was sufficient.

More importantly, the courts in those four cases were looking for a forgery or alteration in order to determine whether the defendant had *intent* "to victimize the institution by exposing it to actual or potential loss." *See Laljie*, 184 F.3d at 189 (citations omitted); *see also Davis*, 989 F.3d at 246–47; *Rodriguez*, 140 F.3d at 167–68, *Thomas*, 315 F.3d at 201. The thinking went that, if there was no forgery or alteration, the bank was a holder in due course and was never at risk—and the defendant therefore lacked the requisite intent. Such an exercise is no longer necessary after the U.S. Supreme Court's decision in *Loughrin*. There, the Court held that subsection 1344(2) does not require the government to prove intent to defraud a financial institution. *Loughrin*, 134 S. Ct. at 2389. The Court reasoned that the statutory language already requires "some real connection to a federally insured bank" and "appears calculated to avoid entangling courts in technical issues of banking law[.]" *Id.* at 2389–90, 2395, n. 9.

As a result, it no longer matters whether a defendant charged with bank fraud under subsection 1344(2) intended to defraud the bank or whether that intent can be shown by evidence that the bank was put at risk. The government is only required to allege (and prove) that the defendant knowingly executed a scheme to obtain money

4

owned, held, or controlled by a federally insured bank and that he did so "by means" of a materially false or fraudulent pretense, representation, or promise. *Id.* at 2389. Counts 1–4 and 8 are more than sufficient in this regard.

Counts 5–7 also satisfy Rule 7(c)(1). Those counts allege that Weichman falsely represented that Dr. B needed a credit line for "personally investing in the stock market" on June 13, 2006 in order to open a line of credit in Dr. B's name, that Weichman falsely represented on June 20, 2007 that Dr. B needed to renew that credit line for "personal investment[,]" and that Weichman falsely claimed on July 26, 2007 that Dr. B needed to increase the credit line for "personal investments, including funding the move of a business[.]" (DE 48 at 4–5.) Weichman argues in his reply that, while these misrepresentations may have been the means by which he opened, renewed, and increased a line of credit in his client's name, they "did not induce the bank to part with any money" because the bank didn't actually part with any money until Weichman subsequently made withdrawals. (DE 136 at 5–6).

At the outset, I note that Weichman waived this argument by making it for the first time in his reply brief. *See River v. Comm'l Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir. 1998); *see also Med. Assur. Co. v. Miller*, No. 4:08-cv-29, 2010 WL 2710607, at *3 (N.D. Ind. July 7, 2010) (collecting cases). Even if he had raised it earlier—and even if he is correct that the false statements he made to the bank in 2006 and 2007 to induce the bank to open, renew, and increase the credit line did not themselves induce the bank to shell out money—Weichman's draws on the credit line were successful only because of the

5

implied misrepresentation that he was authorized by Dr. B to conduct those transactions. These implicit misrepresentations—like the false pretenses under which Weichman allegedly withdrew cash from his clients' accounts in the other counts—were the "mechanism naturally inducing [the] bank . . . to part with its money" and are sufficient at this point in the litigation. *See Loughrin*, 134 S. Ct. at 2393.

For these reasons, the indictment's allegations of bank fraud under 18 U.SC. § 1344(2) satisfy Rule 7(c)(1).

### *Bank Fraud Under 18 U.SC. § 1344(1)*

To make out a claim of bank fraud under 18 U.SC. § 1344(1) an indictment must allege that the defendant: (1) knowingly executed a scheme to defraud a federally insured financial institution; and (2) acted with intent to defraud. *United States v. Ajaji*, 808 F.3d 1113, 1119 (7th Cir. 2015). Weichman argues, again for the first time in his reply brief, that the indictment is insufficient because it does not claim that he intended "to obtain bank property" and because exposing the bank to civil liability and administrative costs would not satisfy the statute. (DE 136 at 7.)

Like the previous argument, Weichman waived this argument by omitting it from his motion. *See River*, 160 F.3d at 1173; *see also Med. Assur. Co.*, 2010 WL 2710607, at *3. In addition, the argument relies on an inaccurate framing of the law. To begin with, the language Weichman quotes—"to *obtain* any of the moneys . . . owned by, or under the custody or control of, a financial institution"—appears in subsection (2) of the statute and does not indicate what is required for bank fraud under subsection (1). 18

U.SC. § 1344. Second, even if Weichman never intended to obtain the bank's money, the government could show Weichman's intent to defraud the bank through circumstantial evidence that he subjected the bank to "risk of civil liability for losing custody of its accountholders' money." *United States v. Moede*, 48 F.3d 238, 242 (7th Cir. 1995). A practical reading of Counts 1–8 makes clear that Centier Bank was put at risk of civil liability when it allowed Weichman to withdraw or transfer money from the accounts and credit line of its clients without their knowledge or consent. Accordingly, the indictment sufficiently alleges the elements of bank fraud under 18 U.SC. § 1344(1).

## CONCLUSION

While it remains to be seen whether the government will be able to prove each element of Counts 1–8 at trial, the indictment sufficiently alleges them under both subsections of 18 U.S.C. § 1344. Accordingly, Weichman's Motion to Dismiss the Indictment (DE 124) is **DENIED** with respect to Counts 1–8.

**SO ORDERED.**

ENTERED: October 12, 2016

s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT